IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

Abingdon Division

TIMOTHY SPARKS,

    Plaintiff

v.      Case No. 1:22CV00015

D. MARTIN

    Defendant

# COMPLAINT

Timothy Sparks, by counsel, respectfully states as follows:

1. This is an action for damages brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiff is a citizen of Virginia and a resident of Tazewell County, Virginia. Plaintiff resides on a family farm situated partly in Tazewell County, Virginia, and partly in McDowell County, West Virginia.

3. Defendant D. Martin is a Deputy Sherriff for McDowell County, West Virginia. At all times pertinent to the claims stated herein, Defendant is, and was at the time of the incidents described herein, acting in that capacity and authority under the color of state law in the events described herein, holding the position or function as a criminal investigator and "Animal Control Officer" for McDowell County, West Virginia. Upon inquiry, Plaintiff later was informed that

there was employed a deputy by the name of Dock Martin and he reasonably believes that Dock Martin is the D. Martin described herein.

4. At the time of the events complained of herein, Plaintiff was 59 years old and suffering from physical disabilities. However, he possessed knowledge., training and education in the training of canines and engaged in such training at and around his home. That undertaking resulted in Plaintiff having possession of a number of dogs some of whom were fully trained for specialized tasks and others who were in various stages of training. Plaintiff had attained a good reputation for his skill and knowledge in dog training and that undertaking was a source of income.

5. On or about February 10, 2020, two West Virginia state policemen came to Plaintiff's property and informed him that they were there to investigate information which had been received questioning whether Plaintiff's animals might be suffering from neglect or abuse. Plaintiff cooperated with their inquiry and allowed them access to observe the conditions for his dogs and horses. Plaintiff has been informed that an anonymous written complaint had been made with the Tazewell County, Virginia, sheriff's office and that office had forwarded that complaint to McDowell County, West Virginia. Following their investigation, the officers told Plaintiff that they were satisfied and found no evidence of neglect. They thanked Plaintiff for his cooperation and left, telling him that that was the end of it.

6. The following day, February 11, 2020, the Defendant Martin came to Plaintiff's property. He was in a marked law enforcement vehicle bearing the identifying emblems of the McDowell County West Virginia Sheriff's Department, was in uniform, and wore a name tag stating "D. Martin." Defendant was accompanied by a second deputy in uniform. Plaintiff did not note the second deputy's name.

7. Plaintiff informed Defendant that the state policeman had visited the day before and were satisfied that there was no problem. Defendant responded that he was the Animal Control Officer and would do his own investigation. Plaintiff allowed Martin and the other deputy access to his animals including the majority of the dogs which were on his property in Virginia. Following a lengthy and cordial visit, Defendant informed Plaintiff that he, as had the state policemen, found no issues with the manner in which Plaintiff was caring for his animals. Before leaving, Defendant asked Plaintiff if he would be interested in adopting out some of the puppies that he owned. Plaintiff responded that he would be interested in finding homes for the puppies.

8. Defendant returned to Plaintiff's property approximately one month later, accompanied by a woman he identified as representing an agency or shelter involved with the rescue and/or adoption out of dogs. She was introduced as "Donna" but her agency was not identified. Plaintiff agreed that donna (and Defendant) could take approximately 20 dogs, mostly puppies, to find homes for. Because the puppies had not been weaned and were still nursing, it was necessary that the mothers go along. The agreement was that the mothers would be taken temporarily until the puppies were weaned, Defendant and Donna would return the mothers as well as certain puppies which Plaintiff had identified for specialized training and would be keeping and not adopting out. Those puppies he was not giving up had to go with the mothers to Donna because they had not been weaned and had to stay with the mother. A total of four dogs were to be returned as the puppies were weaned.

9. One of the mother dogs that was to be returned was named "Peanut" and had been a part of Plaintiff's household for a long time. Peanut had specialized training. Neither Peanut nor the other dogs were ever returned to Plaintiff.

10.     During the first week April, 2020, Defendant returned to Plaintiff's property in uniform and driving the marked law enforcement vehicle. "Donna" was with him along with several persons assisting her. They were travelling in a small bus.

11.     Defendant informed Plaintiff that they were there to take all of Plaintiff's dogs and that he had that morning deputized Donna and the other individuals who were therefore acting as duly authorized law enforcement officers. Plaintiff demanded an explanation of the claimed authority for seizing the dogs. Defendant refused to explain his action and did not produce any warrant, order or other lawfully issued authority for the seizure. Defendant threatened Plaintiff that he would be arrested if he interfered or resisted with the seizure by Defendant or the others he claimed had been "deputized."

12.     Defendant and those acting under his command and direction then chased, rounded up and seized approximately 28 dogs belonging to Plaintiff. Those were all Plaintiff's dogs except for a few which were loose and ran into the woods to evade capture. More than 20 of the dogs were taken from Plaintiff's land in Virginia where Defendant and his "deputies" had no legal authority. Included in the dogs taken was a young animal which did not belong to Plaintiff but had been left in Plaintiff's care for obedience training. The dogs were loaded up into the bus and carried away.

13.     Defendant did not provide Plaintiff with any return, receipt, or any other document identifying the animals which he seized. To Plaintiff's information and belief Defendant did not create any official report or record of his conduct.

14.     No judicial proceedings were instituted by Defendant against Plaintiff alleging a basis or authority to seize the dogs or allowing Plaintiff to challenge the seizure. No accounting was

made to Plaintiff of the disposition of his dogs. Plaintiff has never received the dogs back nor has he been afforded an explanation ow what happened to them. Plaintiff believes that at least some of the dogs were sold.

15. Defendant knowingly, intentionally and maliciously violated rights guaranteed by the United States Constitution. Defendant and his "deputies" under his direction unreasonably entered onto Plaintiff's land without warrants or other legal authority, and searched and seized his property in violation of the Fourth Amendment and took and disposed of his property without Due Process or compensation in violation of the Fifth Amendment.

16. As a result of Defendant's conduct, Plaintiff has suffered substantial damages including: (1) the value of his dogs taken which, with regard to certain of the animals taken, would include the value of the specialized training and Plaintiff's hours of work for the dog; (2) with regard to certain of the dogs, the emotional injury of the loss of a special and close companion and household member; (3) damage to Plaintiff's reputation as a trainer arising from accusations that his animals were taken by animal control and that animals entrusted to him for training were lost.

17. Because Defendant acted intentionally and maliciously, he is liable for punitive damages.

**TRIAL BY JURY IS DEMANDED.**

Wherefore, Plaintiff demands judgment against Defendant in the amount of $250,000 compensatory damages, punitive damages as appropriate upon the evidence adduced, costs, and attorney fees.

|  | TIMOTHY SPARKS |
|---|---|
| BY COUNSEL | Michael A. Bragg VSB 16797 /s/ |
|  | Bragg Law |
|  | P. O. Box 1866 |
|  | Abingdon, Virginia 24202 |
|  | 276-628-9160 |